May it please the court, Allison Guernsey on behalf of the defendant Mr. Chavarria-Arellano. I'd like to reserve three minutes for rebuttal. Mr. Chavarria-Arellano was removed on two occasions and subject to one administrative order of voluntary departure. Because that voluntary departure was a critical component of the subsequent two removals, it's our position that the district court erred in refusing to dismiss the illegal reentry indictment. There are several points that I'd like to address, the first being sort of I think the elephant in the room, which is the administrative voluntary departure was not alleged in the indictment. And so is it properly subject to collateral attack in a criminal proceeding? It would be our position that it is. And the fact that it's not alleged in the indictment isn't fatal to our claim because of the United States Supreme Court's decision in United States v. Mendoza-Lopez. And the district court below and the government in its briefing cites Mendoza-Lopez and refers to its constant reference to when a deportation or when an administrative order is a critical component or an essential element of a criminal charge, it's allowed to be collaterally attacked. But there's a couple of other key phrases and key wording in that Mendoza-Lopez decision that we would argue allows us to collaterally attack the voluntary return in this case. If you look at page 838 and 837 of Mendoza-Lopez, it talks about how Supreme Court cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be a procedure that subjects that administrative decision to judicial review. Later in that same page, it says this principle means that at the very least, when defects in an administrative proceeding are to play that critical role, they must be attacked. So it would be our position that Mendoza-Lopez can be read much more expansively than the government's briefing or the district court. Furthermore, the district court really relied on the statutory language of 1326 and indicated that 1326D allows collateral attacks of deportation orders and refers specifically to deportation orders. Maybe you could respond to the government's argument, which I frankly found somewhat persuasive, that let's say, granted, everything that happened to your client in terms of the administrative voluntary departure shouldn't have happened. But there were other ways he could have tried to remedy that situation besides engaging in the illegal conduct that he did afterwards, right? So given that, why is it that we need to bend over backwards to allow him this? I almost see it as kind of a backdoor route to attack something that happened before. I think there are two points. The first is that the government's, assuming the government's, as we've argued, actions were improper, the government essentially deprived Mr. Chavarria-Arellano of the ability to take advantage of applications for relief that he had pending. He was ultimately, at the time he was given this voluntary removal, he had an application for adjustment of status pending. Now that application was denied, I believe it was only five or six months after the removal, and the cited reason for the denial of that application was that voluntary removal. So in other words, there's a- Was that subject to appeal? I'm sorry, the denial of the adjustment of status application, yes, it was. But he didn't appeal it? No, and my understanding is at the time he was in Mexico, and so when that order was issued it went to a family member. And I don't think, and I don't think the record's clear on this, that he received notice of that actual. Well, let's assume he didn't. Then people go back in later and file motions to reopen because they didn't get notice. I mean, it just seems odd here, maybe along the lines of Judge Watford, that there were potential administrative ways to try to correct this. But he tried to, I wouldn't say he tried to correct it, he tried to circumvent it just by coming back a couple times, right, back across the border. That is correct. He made, as I believe he concedes in his written declaration, a stupid decision. Instead of attempting to seek to remedy the situation in other ways, he attempted to illegally cross the border. There are a couple- But now he wants us to somehow ignore the 1326, you know, the language on deportation order and let him attack that collaterally. But we don't really have any hook to do that as I see it. I'm sorry. I said I don't see what the hook is for us to permit the collateral attack. Our position would be the hook is that that voluntary removal is a fundamental critical aspect of the later deportation because he would not have been in Mexico and would not have been subject to expedited removal proceedings in the first instance. I think what we're saying is that it was within his power to correct that at the time in a way that might have been somewhat more lawful than coming across the border illegally. But you're trying to tell us that we should correct it now and look back at the May 1998 mistake, as it were. And it would be our position that a collateral attack or a correction would be appropriate here because of the criminal sanctions that are attendant to using these deportations in a criminal proceeding. And so although it is true at the time he could have sought additional remedies, he couldn't have sought additional remedies against the voluntary removal. And my understanding is that 8 U.S.C. 1252 actually strips courts of jurisdiction from reviewing things like voluntary removals because they are vested in the discretion of immigration agents. Unless you have a constitutional question, in which case we would have jurisdiction. But that kind of brings me to one of my other questions. And it's based on passing reference in your brief. You say that you're preserving this argument about heightened due process protections at the border because he should have already had the ability to be in the country, so he's coming back in with a heightened due process. So would you just clarify for me, are you making that argument? Are you preserving it for some kind of appeal to the Supreme Court? What's the status of that? Would that be the argument that he had a right to withdraw his application for removal when he crossed across the border? At the time we filed the motion to dismiss in the district court, that was an open question in the Ninth Circuit. And so Mr. Chavarria-Arellano wanted to appeal that decision to the Ninth Circuit, although we do recognize that this Court is bound to rule against us. Can I ask a slightly different question, maybe along the same lines? I guess I'm a little confused as to why you haven't directly attacked the, I guess is it the, I can't remember what the month is, but the 1998 expedited removal order. Why was your client even someone who could be subjected to expedited removal, given his lengthy ties to the United States? Actually, the statute indicates that a person who arrives at the border is considered an arriving alien, and then there are criteria that the border guards or the Customs and Border Patrol will apply, including a continuous period of residence for two years. And one of the issues that we do raise in our brief is, by giving that voluntary removal to Mr. Chavarria-Arellano, they essentially sever that continuous residence. But that's why I don't see why you didn't just directly attack the expedited removal order, saying, look, I'm not an arriving alien. I'm actually out here trying to get back across because of something that you, the government, did unlawfully to me. And so, therefore, I should, I have rights that arriving aliens don't have. I mean, it doesn't seem like you made that direct attack at all. You wanted to go sort of to try to reach back. When it seemed to me there was a viable argument, just go the normal route. And I think at the time that the case was litigated at the district court, the Ninth Circuit case was not so clear that we couldn't attack the expedited removal on the grounds that we did raise, which is then also why, in this court, we raised the issue of the voluntary departure is tied or is integral to the expedited removal because were it not for that voluntary departure, he wouldn't have been subject to the expedited removal process to begin with. Do you want to save your remaining time? Thank you. Thank you. Could you just start by addressing that point that's been bothering me ever since I picked up this case? He just does not, this gentleman does not seem like somebody who should have been subjected to expedited removal. No, well, Your Honor, we maintain, the government maintains that he was properly subjected to the expedited removal. The government maintains that there was actually not a due process issue with the voluntary departure. Let's say that we disagreed with you on the administrative voluntary departure, that that should never have happened. I mean, is that what you're talking about? Yes. Okay. I actually don't see, it seemed to me pretty clear that that should not have happened. But let's say that we disagree with you on that, then why, I mean, he had been in the country for how long? I, he'd been in the country for several years. I actually don't know the date. I believe he arrived in the country when he was 16 years old. I mean, he has lengthy, well-established ties to the country. He's put outside the country, really, in my view, for illegitimate, unlawful reasons. It just doesn't, he doesn't strike me as someone who falls into the class of people who would be called arriving aliens. Those are folks who normally have no ties to the country. That's the whole reason why we say you basically have no due process rights because you haven't established any kind of a relationship with our country. And he doesn't fit that bill at all. Well, I guess if you're going to say that the voluntary departure was in error, then in terms of whether or not he ought to have been subjected to the, I mean, the voluntary departure, it was on the books, for lack of a better explanation. And if the defendant wanted to seek a waiver of that voluntary, seek a waiver of the time period that the voluntary departure then applied to him in terms of when he could apply for removal, he could have sought that waiver, and he didn't. So just to begin with, do you agree that he shouldn't have been sent out on an expedited removal or expedited departure?  May 1998. No, we don't agree with that. Well, how can you say that he, why do you not agree with that? Your Honor, at the time that the defendant was given the voluntary removal, he was provided with an I-826. And the I-826 specifically detailed that he was believed to be in the United States illegally. And that's the language employed by the form, that he was believed to be in the United States illegally. However, he had the opportunity to go before an immigration judge who would determine whether or not he could remain in the United States. And having been provided with those rights, which were read to him in Spanish, and then he was provided the form, and we know that because he signed that form, which is at ER 44-45. Defendant does not maintain that he's illiterate. Defendant opted not to initial next to the provision that said, I want an immigration judge to adjudicate my case. He opted to initial next to the provision that said, I ask to be removed from the country. I give up my right to a hearing. But wait, I thought there was no basis for him to be removed, given the crime for which he had been arrested at that time. Am I wrong on that? No, he was illegally in the country at that time. He actually puts, if you look on his forms. Okay, I thought he was lawfully in the country, was in the process of adjusting to LPR status. He was illegally in the country and in the process of adjusting to LPR status. He did have an application pending, that much is true. If you look to his application, he actually denotes on the application his status is illegal. That's what's actually written on the form. So he's adjusting because of his wife? That's correct. That's correct. So he was illegally in the country. There is a policy memo that suggested that he ought not be put in proceedings until that, until his request to adjust status was adjudicated. And I understand that policy memo. But I would also note that, and this is, I'm not trying to dodge the question, but this is in the context of a 1326. And for a defendant to prevail, not only does he have to be permitted to attack this earlier order, he also has to have you agree that, but for that order, to forgive him coming illegally back into the country. And to say that, but for that order, he would have never left the country. And in order to get to, but for that order, he would have never left the country, you also have to buy off on that his adjustment of status would have been granted. Well, we can't tell that. I mean, the reason his adjustment wasn't granted in the long run, I mean, it's a perfect circle, because the reason his adjustment wasn't granted is because of what happened subsequently, that he had a voluntary removal. Right. And that's the basis that was stated. So we really don't know whether his status would have been changed. One can presume that he's married now to an American citizen, that he had a pretty good chance of it being changed, right? But for the intervening voluntary removal. His adjustment of status application denotes that he requires a waiver pursuant to convictions. So there was that weighing against him. Additionally, defendant maintains at the time of this 1326, he would not have had a deportation but for this voluntary removal. That's why he suggests that he should be able to go back. By the time of the 1326, defendant has the removal, the expedited removal at the border, and then a reinstatement of that removal in 2000. By the time of that reinstatement, defendant has a drug trafficking conviction and is ineligible for relief from removal. So in asking the courts to accept that but for due process concerns and the voluntary removal, he would have never left the country and never would have been in a position to falsely purport to being a United States citizen to reenter the country. That's asking a lot. That's asking for him to have taken several different paths down the road, not just the voluntary removal. What's the date of the drug conviction? The drug conviction is included in the excerpts. It's in 2000. I apologize. I ought to have had that right of hand. It's in the supplemental excerpts of record at the end. It's marked Exhibit 3 at the bottom. Okay. But it did predate the reinstatement of his deportation, which is what is alleged in the indictment. The indictment relies on a July 1998 removal and its 2000 reinstatement. And defendant seeking to attack a prior contact with immigration, there is no support for that. Defendant has cited some dicta in Mendoza-Lopez to argue that it's feasible, but there is no support for that. 1326D specifically details what can be attacked collaterally in a 1326 prosecution. So even, I guess your point is that even if you could put him back where he was, and that would be in the adjustment of status situation, that intervening events of the drug conviction just make it impossible to have a kind of a pristine and putting him back to the prior status. Is that a fair statement? That is a fair statement. Our primary argument is that you don't need to breach the voluntary removal at all because there just isn't authority to do that. The defendant is permitted to collaterally attack only those convictions which are detailed in the indictment upon which the indictment rests. And we cite Mendoza-Lopez for that as well as Yuvalda Figueroa. But beyond that, for defendants to proffer that he never would have left the United States but for this voluntary removal asks for any number of assumptions. Yes, one of which being that he either would not have committed that aggravated felony but for having had a voluntary removal in his past or that he would have naturalized prior to the aggravated felony. There are any number of assumptions that this court has to make in order to get defendant back into a position to where he would have been non-deportable. Unless the court has further questions. Okay. Thank you. Thank you. Just two brief points. First, according to the memo that's submitted in the excerpts of record, at the time Mr. Chavarria-Arellano was given the voluntary removal, he was considered to be in lawful status in the United States. Second, we believe that the I-826 would be insufficient to show that a voluntary removal was knowing, intelligent, and voluntary. And we cited the Gomez case for that proposition. We've challenged the knowing and voluntariness of that waiver and so it's the government's burden to put forth evidence to show that that voluntary departure was knowing and intelligent. And third, just addressing the reinstatement issue, we would rely on arias ordinais, which is cited in the briefing, A-R-I-A-S hyphen O-R-D-O-N-E-Z, which essentially says a reinstatement falls with the original order. So if the expedited removal is invalid, then its reinstatement stands on no stronger legal basis, unless the court has further questions. Thank you very much for argument and briefing this morning. Case of United States v. Chavarria-Arellano is submitted.
judges: Rothstein, McKEOWN, WATFORD